COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DONALD B. BURNEY,                                       )

                                                                              )             
No.  08-03-00465-CV

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )               
330th District Court

YVETTE JOHNSON BURNEY,                          )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )           
  (TC# DF-00-22021-Y)

                                                                              )

 

 

O
P I N I O N

 

In this appeal
from a final divorce decree, Donald B. Burney challenges the trial court=s discretion in determining the child
visitation schedule, the child support payment, and the division of community
property.  We affirm in part, reverse in
part.

Donald and Yvette
Burney were married on July 31, 1998 and were separated on or about December 8,
2000.  Out of their marriage, one child
was born on March 16, 1999; a daughter by the name of Savannah Burney.  Mrs. Burney filed for divorce on December 11,
2000.  Mr. Burney filed an original
answer and counter-claim for divorce on December 27, 2000.








At the time the
divorce was filed, Mrs. Burney, along with Savannah, resided in the home that
was purchased while Mr. and Mrs. Burney were married which was located at 717
Teresa Drive, DeSoto, Texas.  At trial,
Mrs. Burney testified that this home was foreclosed on October 2,
2002.  She stated that there was a court
order directing her to pay the mortgage on the residence, but that she was
unable to do so because Mr. Burney placed a code on the Wells Fargo account,
preventing her access.  She stated that
she did not attempt to send him a check for the mortgage, but rather tried to
pay it as she normally would, making the payment directly to the bank.  This code was placed on the account sometime
in May 2001.  She believed that they had
paid $155,000 for the home and that Mr. Burney had made a down payment of
$16,000 from savings he had accumulated prior to their marriage.  She stated that there was a second mortgage
on the residence held by Bank One.  She
was able to make a deal with Bank One with regard to the balance due on the
account, which was approximately $10,000. 
She offered to buy the house for $165,000 and the offer had been
accepted the day before the hearing; she stated that she did not know how much
of a down payment she was going to give on the house, but that the money would
be coming from a family loan.  For the
duration of their separation until the date of the hearing, Mrs. Burney has
been living in the house.








At the bench
trial, Joseph Pickett, a certified public account, testified as to his findings
of an audit he conducted of Mr. Burney=s
assets as was ordered by the court[1].  He stated that he had attempted several times
to gather the documents necessary to perform the audit from Mr. Burney.  He made about five or six requests, some in
writing, some oral, for these documents. 
His initial request was submitted in writing on August 2002.  The documents he requested were
Mr. Burney=s bank
statements, personal investment statements, income and business statements, and
W-2 forms.  Based on the information he
was able to gather, Mr. Pickett testified that he was able to determine that in
2001, Mr. Burney deposited approximately $62,000 into his personal bank
account.  Mr. Pickett chose the year 2001
because it was for this year that he had the most complete information and he
had a reasonable number of bank statements as well.  He stated that if Mr. Burney had additional
bank accounts, he did not have access to any of that information.  Mr. Pickett testified that in 2001, there was
difference of approximately $10,000 in the amount of money that was reported
from Mr. Burney=s
partnership and the amount that was deposited into his personal account.

Mr. Burney
testified that he is a shareholder at the accounting firm Burney, McClellan,
and Associates.  He stated that he was
aware Mr. Pickett was ordered by the court to examine his books and
records.  He also stated that he had
advance notice of the documents Mr. Pickett needed to examine and that he made
available to Mr. Pickett all of the records he had.  He stated that there may have been a few bank
statements that he did not have, but he offered to authorize access to these
records at the bank for Mr. Pickett.  He
stated that some of these documents were also available online, but he did not
print out these documents or ask for copies at the bank because he did not want
to incur the costs of producing them.  He
believed Mr. Pickett was lying about the availability of such documents because
he was not a very competent CPA.  He
provided testimony regarding his assets and the community indebtedness, but
testified that he could not account for the deposits made in excess of his
monthly salary that were discovered by Mr. Pickett.








After a bench
trial was held on February 20, 2003 and March 18, 2003, the trial court signed
the final divorce decree on June 13, 2003. 
The trial court named Mr. and Mrs. Burney joint managing conservators;
ordered a standard visitation schedule for Mr. Burney; ordered Mr. Burney
to pay $563.80 of monthly child support; awarded Mr. Burney a $16,000 lien on
their home located on 717 Teresa; and provided for the division of the
remaining marital estate. 
Mr. Burney filed a motion for new trial in which he raised the same
issues before this Court on appeal. 
After a hearing, the trial court entered an order granting in part and
denying in part Mr. Burney=s
motion and entered modifications on the issue of the division of the community
estate and indebtedness on August 29, 2003. 
Upon Mr. Burney=s
request, the trial court entered Findings of Fact and Conclusions of Law.  Mr. Burney now timely brings this appeal.

DISCUSSION

Visitation
Schedule

In Issue One, Mr.
Burney asserts that the trial court abused its discretion by failing to order
the expanded visitation schedule he requested and which Mrs. Burney did not
oppose.  Mr. Burney asserts that
although he provided the trial court with testimony regarding his close
relationship with Savannah, and his participation in her school work and school
activities, the trial court arbitrarily refused to grant his requested
visitation schedule.  Mr. Burney=s requested visitation schedule is as
follows:

1.         Court ordered visitation with the
Respondent every Wednesday, commencing at 4:00 p.m. and terminating with the
child=s return
on Thursday morning for school or to the Petitioner as appropriate with the
school year.

 

2.         Court ordered visitation with the Respondent
the first, third, and fifth Friday, commencing at 4:00 p.m. and terminating
with the child=s return
on Monday morning for school or to the Petitioner as appropriate with the
school year.

 








3.         Court ordered summer visitation with
the Respondent, at his option, after reasonable notice to the Petitioner, for a
total period of one month in the summer of each year, to be exercised by him in
one week or two week segments, but with the option to be allowed a period of
four consecutive weeks in the summer for visitation.

 

The trial court awarded the
standard possession order applicable in both instances where Mr. Burney
resides 100 miles or less from Savannah and where he resides more than 100
miles apart.

Standard
of Review

A trial court has
wide discretion in determining the best interest of a child in family law
matters such as custody, visitation, and possession.  Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex. 1982).  The best interest
of the child is the primary consideration in determining conservatorship and
possession of and access to the child.  Tex.Fam.Code Ann. ' 153.002 (Vernon 2002).  Additionally, joint managing conservatorship
does not require the award of equal or nearly equal periods of physical
possession of and access to the child to each of the joint conservators.  Tex.Fam.Code
Ann. '
153.135.  The standard possession order
provided by Subchapter F constitutes a presumptive minimum amount of time for
possession of a child by a parent named as a joint managing conservator who is
not awarded the primary physical residence of the child in a suit.  Tex.Fam.Code
Ann. ' 153.137
(Vernon Supp. 2005).








Contrary to Mr.
Burney=s
assertion in his appellate brief that he provided explicit testimony regarding
his relationship with Savannah, upon a close examination of the record, we find
that the majority of Mr. Burney=s
testimony revolved around the issue of the division of property.  Mr. Burney did testify as to the visitation
schedule he was requesting.  He testified
that he picked Savannah up from school every Wednesday between the hours of 4
p.m. and 6 p.m. and then dropped her off at school the next school day; he also
picked her up between 4 p.m. and 6 p.m. every third and fifth Friday of the
month and then dropped her back off at school the next school day.  Mrs. Burney said she did not have a problem
continuing the current visitation schedule, including Mr. Burney picking up
Savannah after school on Wednesday and returning her back to school the next
morning.  Further, she did not request
any restrictions for the visitation schedule.

Mrs. Burney also
testified as to a specific incident that occurred sometime in October 2002 that
resulted in Mr. Burney being arrested for committing family violence.  According to Mrs. Burney, Mr. Burney had
picked Savannah up, had gone to their home and refused to leave.  She called the police and shortly thereafter,
two police officers and two sheriff officers arrived at her home.  Mr. Burney then ran out of the house with
Savannah in his arms, but was stopped before he was able to get into his
vehicle.  While the police officers were
asking him to put Savannah down, Mrs. Burney seeing Savannah cry, reached out
for her; Mr. Burney then lifted his fist in the air and hit Mrs. Burney.  All this occurred in front of the police and
Mr. Burney was then arrested.  Since that
occasion however, she stated that there have been no other incidents involving
family violence.








Additionally,
there was another incident in which she was the party who committed the family
violence.  While the details of this
incident were not provided, Mrs. Burney stated that Mr. Burney did not
attend the hearing regarding this matter and that therefore, the charges were
dismissed.  The trial court also made the
following finding of fact:  ARespondent, Donald B. Burney has
committed family violence in the past; however, there is not a likelihood of
future family violence.@  The trial court also made the following
pertinent conclusion of law:  AIt is in the best interest of the
child, Savannah Burney, for Donald B. Burney to have access to the child
pursuant to a standard schedule of visitation.@

Based on the
testimony heard by the trial court, we find that it did have sufficient evidence
to exercise its discretion.  See
Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.App.--El Paso 1998, no
pet.).  In exercising its discretion, we
find that the trial court did not act arbitrarily or unreasonable.  The trial court followed the standard visitation
schedule and given the young age of the child, we find the trial court=s decision to be reasonable.  As such, we overrule Issue One.

Child
Support

In Issue Two, Mr.
Burney contends that the child support payments ordered by the trial court
exceeded the traditional guidelines without justification on the record.  Mr. Burney argues that his net monthly income
should have been $2,275 and the ordered child support payment should have been
$455.05 per month.  The trial court found
Mr. Burney=s net
monthly income to be $2,559 and ordered a monthly child support payment of
$563.80, the amount being adjusted to include medical insurance for the child.








A trial court=s support order will not be disturbed
on appeal unless the complaining party shows that the order constituted a clear
abuse of the court=s
discretion.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990); see also, Norris v. Norris, 56
S.W.3d 333, 337 (Tex.App.--El Paso 2001, no pet.).  A court abuses its discretion when it acts
without reference to guiding rules and principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106
S.Ct. 2279, 90 L.Ed.2d 721 (1986). 
Stated differently, the appropriate inquiry is whether the ruling was
arbitrary or unreasonable.  Smithson
v. Cessna Aircraft Company, 665 S.W.2d 439, 443 (Tex. 1984); Landry v.
Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex. 1970).  The mere fact that a trial judge may decide a
matter within her discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Southwestern
Bell Telephone Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965); Jones v.
Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

In order to
determine whether an abuse of discretion has occurred, we engage in a 

two-pronged inquiry:  (1) Did the trial court have sufficient
information upon which to exercise its discretion; and (2) did the trial court
err in its application of discretion?  Lindsey,
965 S.W.2d at 592.  The traditional
sufficiency review comes into play with regard to the first question; however,
our inquiry cannot end there.  Id.  We must proceed to determine whether, based
on the elicited evidence, the trial court made a reasonable decision.  Id.; see also, Jenkins v.
Jenkins, 16 S.W.3d 473, 477-78 (Tex.App.--El Paso 2000, no pet.)  An abuse of discretion does not occur as long
as some evidence of a substantive and probative character exists to support the
trial court=s
decision.  Lide v. Lide, 116
S.W.3d 147, 152 (Tex.App.--El Paso 2003, no pet.), citing In the Interest of
Gonzalez, 993 S.W.2d 147, 155 (Tex.App.--San Antonio 1999, no pet.); D.R.
v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.--Fort Worth 1995, writ denied).

The best interest
of the child is the primary consideration in determining questions of child
support.  Hollified v. Hollifield,
925 S.W.2d 153, 155 (Tex.App.--Austin 1996, no writ); MacCallum v. MacCallum,
801 S.W.2d 579, 583 (Tex.App.--Corpus Christi 1990, writ denied).  For purposes of our analysis, Anet resourse@
includes all wages and salary income, 








self-employment income, and all
other income actually being received, including capital gains.  See Tex.Fam.Code
Ann. '
154.062(b).  The court may order support
above or below the guideline amount if the evidence rebuts the presumption that
application of the guidelines is in the best interest of the child and
justifies a variance from the guidelines. 
Tex.Fam.Code Ann. ' 154.123(a).

In this case, Mr.
Burney is in essence challenging the sufficiency of the evidence to support the
trial court=s finding
of his monthly net resources amounting to $2,559.  As we understand Mr. Burney=s argument to be, he is not arguing
that the trial court varied from the child support guidelines, but rather that
his monthly net resources were miscalculated.

Mr. Burney
provided the trial court with a financial information statement that showed his
net income being $2,043.  He informed the
trial court that the child support payment he was making at the time of the
hearing was $563.  This was the amount
ordered by the trial court as a result of the temporary hearing it held on
April 26, 2001; the trial court at that time found Mr. Burney=s net resources to be $2,559.  Mrs. Burney testified that while they were
living together, Mr. Burney made about $2,500 to $3,000 a month.  She was asking for $865 per month in child
support.  The trial court also heard the
testimony of Mr. Pickett in regards to Mr. Burney=s
earnings.  Mr. Pickett testified that Mr.
Burney had deposited approximately $62,000 into his bank account in 2001.  He also testified that Mr. Burney=s earnings in 2001 were approximately
$62,000.  Mr. Burney stated that he could
not account for the deposits made into his account above his monthly
salary.  Based on the record before this
Court, we find that the trial court had sufficient evidence upon which to
exercise its discretion.  Based on such
testimony, we find the trial court=s
decision does not demonstrate an abuse of discretion.  We overrule Issue Two.

 








Division
of Community Property

In his third
issue, Mr. Burney argues that the trial court did not make a fair, equitable,
or appropriate apportionment of the community assets and liabilities.  Tex.Fam.Code
Ann. ' 7.001
(Vernon 1998) gives the trial court broad authority to divide the martial
estate in a manner it deems just and right. 
The division of property should be corrected on appeal only if the trial
court clearly abused its discretion by ordering a division that was manifestly
unjust or unfair.  In re Marriage of
Taylor, 992 S.W.2d 616, 620 (Tex.App.--Texerkana 1999, no pet.).  We employ a two-pronged inquiry in our analysis:  (1) whether the trial court had sufficient
information upon which to exercise is discretion; and (2) whether the trial
court abused its discretion by making a property division that is manifestly
unjust or unfair.  Evans v. Evans,
14 S.W.3d 343, 346 (Tex.App.--Houston [14th Dist] 2000, no pet.); Lindsey,
965 S.W.2d at 592.  It is the duty of the
reviewing court to presume that the trial court properly exercised its
discretion in dividing the marital estate. 
Frommer v. Frommer, 981 S.W.2d 811, 814 (Tex.App.--Houston [1st
Dist.] 1998, pet. dism=d),
citing Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981).

Thus, the party
complaining of the trial court=s
division must demonstrate the division was so unjust, the trial court abused
its discretion.  Frommer, 981
S.W.2d at 814, citing Murff, 615 S.W.2d at 698.  We defer to the trial court=s determination of the credibility of
the witnesses=
testimony and disturb the trial court=s
findings only in a case of clear abuse of discretion.  Murff, 615 S.W.2d at 700.








Community property
does not need to be divided equally, but it must be equitable.  See Kimsey v. Kimsey, 965 S.W.2d 690,
704 (Tex.App.--El Paso 1998, pet. denied). 
A trial court may consider many factors in exercising its discretion,
and it is presumed that the trial court properly exercised its discretion.  Murff, 615 S.W.2d at 699.  Some of the factors a trial court may
consider in exercising its discretion are: 
(1) the spouse=s
capacities and abilities; (2) benefits that the party not at fault would have
derived from the continuation of the marriage; (3) business opportunities; (4)
education; (5) physical conditions of the parties; (6) the parties financial
condition and obligations; (7) size of the separate estates; (8) the nature of
the property; (9) the disparities in earning capacities and incomes; and (10)
the fault in the breakup of the marriage. 
Id.

It is the
responsibility of the parties to provide the trial judge with a basis upon
which to make the division.  Wallace
v. Wallace, 623 S.W.2d 723, 725 (Tex.Civ.App.--Houston [1st Dist.] 1981,
writ dism=d).  One who complains of the way the trial court
divided the properties must be able to show from the evidence in the record
that the division is so unjust and unfair as to constitute an abuse of
discretion.  Id.  The trial court=s
discretion to divide the community estate is not unlimited, and the court must
have some reasonable basis for an unequal division of the property.  Zieba v. Martin, 928 S.W.2d 782, 790
(Tex.App.--Houston [14th Dist.] 1996, no writ).

The trial court
entered the following pertinent findings of fact and conclusions of law
regarding the distribution of the marital estates:

Findings of Fact

 

.               .               .

 

13.       Respondent, Donald B. Burney, has
interfered with Yvette Johnson Burney=s
use and enjoyment of the community residence; such interference resulted in
foreclosure.

 

14.       Petitioner, Yvette Johnson Burney, was
able to purchase the residence back after foreclosure.  The residence is without equity at this time
due in large part to the actions of Donald B. Burney.








15.       Respondent, Donald B. Burney, paid
Sixteen Thousand Dollars ($16,000.00) from his separate funds as a down payment
on the home.

 

16.       There is disupted evidence of community
debt.  However, the evidence is unclear
and/or insufficient to determine the extent or acquisition of debt.

 

17.       Petitioner, Yvette Johnson Burney, has an
automobile; Respondent, Donald B. Burney, has an automobile.

 

18.       Each party has personal property.  Donald B. Burney is driving a Volvo
automobile for which Yvette Johnson Burney is financially responsible.

 

19.       Community property was accumulated during
the marriage; the exact nature, description, and/or extent of the community
property is unclear.

 

20.       Respondent, Donald B. Burney, is a
partner in an accounting firm, Burney, McClellan and Associates.

 

21.       Petitioner, Yvette Johnson Burney, used
funds which were community funds to pay community debt during the course of the
marriage.

 

                                                              .               .               .

 

24.       Petitioner, Yvette Johnson Burney,
retained the services of an expert, Joe Pickett, to determine the extent of the
assets held by Respondent, Donald B. Burney, and the community.

 

25.       Respondent, Donald B. Burney, was
uncooperative with the requests made for production and inspection of
documents.

 

26.       Petitioner, Yvette Johnson Burney, was
unable to obtain full and complete disclosure as to the extent of the
community.

 

27.       Respondent, Donald B. Burney, failed to
provide full and complete disclosure as to the extent of the community,
although in control of the majority of documents reflecting the community estate.

 

28.       Neither party has made specific requests
for any specific community property, with the exception of the appliances in
the home. 

 

Conclusions of Law

 

                                                              .               .               .








7.         The residence is without equity at this
time due in large part to the actions of Donald B. Burney.  Yvette Johnson Burney should be awarded the
residence subject to a lien in the amount of Sixteen Thousand Dollars ($16,000.00),
payable to Donald B. Burney for monies paid from separate funds as the down
payment for the residence.[2]








8.         There is some community debt to be
divided; however, the evidence is unclear and/or insufficient to determine the
extent or acquisition of debt.  Debt
shall be assigned to the party in whose name the debt or account is held.  

 

9.         Yvette Johnson Burney should be awarded
the automobile in her possession; Donald B. Burney should be awarded the Volvo
automobile in his possession with the attendant debt.  Donald B. Burney should be ordered to
refinance the Volvo and remove Yvette Johnson Burney from the note and title.

 

10.       Each party should be awarded his or her
personal possessions.

 

11.       The parties should divide equally the
community property not specifically awarded to either party.  

 

12.       The appliances in the home shall remain
with the home for the use and benefit of the child, Savannah Burney.

 

13.       Donald. B. Burney should be awarded all
interest in and to Burney, McClellan and Associates, and any property owned by
the firm that he may have an interest in.

 

14.       Each party should be awarded any and all
retirement/pension plans, IRAs, 401-K, or other monies held in his or her name.

 

                                                              .               .               .

 

17.       Based upon the testimony and evidence
which was admitted at trial, the division of the community estate is just and
right, having due regard for the rights of each party and Savannah Burney, the
minor child of the marriage.

 








Mr. Burney
contends that there was no just division of the community estate indebtedness
he testified to and as reflected in a spreadsheet he offered as an exhibit at
the hearing, which provided a summary of his testimony.  He argues that the total indebtedness totaled
$73,280.30, with $48,923.45 being accrued by Mrs. Burney.  Therefore, he argues that the trial court
should have ordered Mrs. Burney to pay such amount.

At the hearing,
Mr. Burney submitted to the trial court a spreadsheet listing the community
indebtedness.  The list included the
accounts relating to their residence, including three liens on their residence
being held by Wells Fargo, Bank One, and Mr. Tommy Henson.  He then testified that they had an MBNA
account and First USA Mastercard that had debt they accumulated during their
marriage.  There was also a Wal-Mart account
used to buy a refrigerator while they were married, which at the time of the
hearing, had an outstanding balancing of approximately $500.  He testified as to an American Express
account which had accumulated debt from their marriage that by the time of the
hearing, he had already paid off with funds from the proceeds of the sale of a
rental property he had acquired before they were married.  He stated that the bill was under
$2,000.  Mr. Burney also testified as to
a cellular wireless account totaling an outstanding balance of $790.68.  He stated that Mrs. Burney had accumulated
this debt; that it was her phone and that she had not paid on it.  Mrs. Burney stated that she in fact did run
up the bill, but that when she attempted to pay on it, Mr. Burney would not
sign the documentation required by Southwestern Bell.








As for the
vehicles, Mr. Burney stated that there was a court order for Mrs. Burney to pay
on a Ford Winstar they had bought while they were married.  Mrs. Burney said that Mr. Burney contacted
Ford and ordered them not to talk to her, but Mr. Burney testified that he did
not do so.  Mr. Burney stated that Mrs.
Burney left the Winstar in the parking lot of his apartment complex sometime in
April 2002.  Eventually, the vehicle went
into default and he had to surrender the vehicle to the dealer.  Mrs. Burney stated that she attempted to
change vehicles with Mr. Burney, since she was on the Volvo account.  However, Mr. Burney refused to change
vehicles with her.  Mr. Burney testified
that she never asked him to switch vehicles. 
In addition, Mr. Burney stated that both he and Mrs. Burney were named
on the Volvo account and that the remaining outstanding balance of $17,885,67
should be split between both parties.

Additionally, the
debts provided by Mr. Burney once the foreclosure of the home is taken into
account do not add up to $73,280.30 indebtedness.  Mr. Burney fails to provide us with a
detailed accounting of such debt, just as he failed to do for the trial
court.  Mr. Burney is also a partner in
an accounting firm that among other things, owns the building the office is
located in.  It is unclear what Mrs.
Burney=s
profession is, but she did testify as to several businesses she owned, none of
which appeared to be very profitable and all of which she eventually
closed.  She stated at the hearing that
she was doing contract work and her monthly salary ranged from $0 to
$5,000.  Mr. Burney it appears, has
greater future opportunities and more ability to retire the debts, than Mrs.
Burney.  We find that the trial court had
sufficient evidence upon which to exercise its discretion in dividing the
marital estate and therefore find no abuse of discretion in the trial courts
distribution.

Separate
Property








Mr. Burney also
challenges the trial court=s
failure to account for an insurance company check, a property travel expense
check, and a washer and dryer.  Mr Burney
argues that each of these items were his separate property.  Mr. Burney testified that he received a check
from the insurance company for a theft that occurred at their home.  He stated that by the time he found out about
the theft, the insurance had already issued a check and mailed it to the 717
Teresa address.  He also stated that Mrs.
Burney cashed a travel expense check for $700 without his authorization.  He stated that by the time Mrs. Burney
received these checks, the joint accounts had already been closed.

Mrs. Burney also
testified with regard to the insurance check, the travel expense check, and the
payroll check.  She stated that the
insurance check was to cover the loss of lawn equipment, some of which was hers
and some of which belonged to Mr. Burney, all of which was being stored in the
residence=s
garage.  When she received the check, she
forged his name and deposited the amount into their joint account.  The money was used for living expenses; this
occurred while they were already separated. 
She also forged his signature on his payroll check and deposited the
check into another joint account. 
Additionally, she stated that it was customary for her to endorse and
deposit his payroll checks when he did not have time to go to the bank.  As for the travel expense check, she stated
that it was a check for about $50 or $75 She testified that she probably used
the money for groceries and to pay for day care.

We find that the
trial court could have believed Mrs. Burney=s
testimony regarding what she did with the funds from the payroll, travel
expense, and insurance checks; that is, that she deposited the monies into
their joint accounts and used them for the family=s
living expenses.  In the marital
relationship, each spouse has a duty of support owed to the other spouse.  See Tex.Fam.Code
Ann. '
2.501.  To the extent any separate funds
of Mr. Burney were expended for normal community living expenses, such as rent,
food, etc., there is no right to reimbursement because these merely extinguish
the obligation of each spouse to support the family.  In re Marriage of Case, 28 S.W.3d 154,
161 (Tex.App.‑-Texarkana 2000, no pet.).








As for the washer
and dryer, the trial court found that the appliances were to remain in the home
for the benefit of the child.  Mr. Burney
testified that the washer and dryer belonged to him and that he wanted the
property returned to him.  According to Mrs.
Burney=s
testimony, the washer and dryer belonged to Mr. Burney before they were
married; she had a set of her own, and when they married, he suggested she get
rid of her set and use his.  She did not
think she should give those back to Mr. Burney.

Both parties
testified that the washer and dryer were the separate property of Mr. Burney. A
trial court has no discretion to divest title to separate personal property and
award that property to the other spouse in a divorce.  Cameron v. Cameron, 641 S.W.2d 210,
219-20 (Tex. 1982). Early in Texas family law jurisprudence, a trial court had
wide discretion to dispose of any and all of the parties' personal property,
separate or community.  See e. g.,
Fitts v. Fitts, 14 Tex. 443, 450 (1855); Hedtke v. Hedtke, 112
Tex. 404, 248 S.W. 21, 23 (1923); Tullis v. Tullis, 456 S.W.2d 172, 173
(Tex.Civ.App.‑‑El Paso 1970, writ dism=d);
Campbell v. Campbell, 554 S.W.2d 10, 12 (Tex.Civ.App.--Fort Worth 1977,
no writ); Cooper v. Cooper, 513 S.W.2d 229, 233-34 (Tex.Civ.App.--Houston
[1st Dist.] 1974, no writ); Ramirez v. Ramirez, 524 S.W.2d 767, 769
(Tex.Civ.App.--Corpus Christi 1975, no writ); Muns v. Muns, 567 S.W.2d
563, 564‑65 (Tex.Civ.App.--Dallas 1978, no writ)(and cases cited
therein).  However, the law changed
significantly in regards to a trial courts authority to award separate personal
property.  See Cameron, 641 S.W.2d
at 219-20.  After Cameron, a trial
court could no longer award the separate personalty of one spouse to another as
part of a property division incident to divorce.  Siefkas v. Siefkas, 902 S.W.2d 72, 79
(Tex.App.‑-El Paso 1995, no writ), citing Cameron, 641 S.W.2d. at
219-20.








We are cognizant
of the efforts of the trial court to set aside separate personal property of
Mr. Burney for the use and benefit of his daughter Savannah Burney.  We also recognize that a trial court may set
aside separate property for the use and benefit of a child born of the marriage
as part of an award of child support.  See
Tex.Fam.Code Ann. ' 154.003(4) and '
154.003(5).  For example, a trial court
may award the separate property residence of one spouse to the other spouse
until the child reaches the age of majority. 
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 141 (Tex. 1977); Gerami
v. Gerami, 666 S.W.2d 241, 242 (Tex.App.-‑Houston [14th Dist.] 1984,
no writ); Girard v. Girard, 521 S.W.2d 714, 719 (Tex.Civ.App.‑-Houston
[1st Dist.] 1975, no writ).  Presumably,
a court could set aside the separate personal property as well as the
separate real property of one spouse for the use and benefit of a child
as well.  However, we are aware of no
case in which a trial court has expressly done so.

We need not decide
today whether or not a trial court may temporarily set aside these types of
separate personal property because that is not what occurred in this case.  Even if a trial court could set aside this
type of separate personal property, (an issue we expressly do not reach here)
it could not divest title from one spouse and vest it in the other spouse.  See Cameron, 641 S.W.2d. at
219-20.  In this case, rather than set
aside the washer and dryer of Mr. Burney for the benefit of his daughter for a
specified period of time, the trial court granted permanent ownership rights to
Mrs. Burney in the final decree of divorce. 
In it=s
conclusions of law, the trial court stated that the appliances were to remain
in the home for the Ause
and benefit of the child, Savannah Burney.@  However, given that the final decree of
divorce awards permanent possession to Mrs. Burney, a divestiture of Mr. Burney=s separate property occurred.








Even though a
trial court has broad discretion in dividing the marital property, it has no
discretion to divest a spouse of his or her separate property.  Cameron, 641 S.W.2d at 219-20; Eggemeyer,
554 S.W.2d at 142.  Accordingly, if a
trial court divests a spouse of his separate property, reversal is
required.  See Siefkas, 902 S.W.2d
at 79-80.  Further, an appellate court
does not have the authority to render a judgment dividing the parties= marital property; we must instead
reverse the judgment and remand the property division issue to the trial
court.  McKnight v. McKnight, 543
S.W.2d 863, 866 (Tex. 1976); Schlafly v. Schlafly, 33 S.W.3d 863, 872
(Tex.App.‑‑Houston [14th Dist.] 2000, pet. denied); Siefkas,
902 S.W.2d at 80.  However, where the
error committed by the trial court is a legal one, we have the authority to
instruct the trial court to redivide the property without conducting a new
evidentiary hearing or taking any new evidence. 
Siefkas, 902 S.W.2d at 80. 
We instruct the trial court to redivide the property in accordance with
this opinion without conducting a new evidentiary hearing or taking any new
evidence or in the alternative suggest remittitur pursuant to Tex.R.App.P. 46.3.[3]

Accordingly, upon
the filing of a remittitur by Appellee of the washing machine and dryer within
fifteen days of our judgment, the judgment of the trial court is affirmed in
all respects.  If no remittitur is filed
in accordance with this opinion and judgment, the cause will be remanded for a
new trial to rightly divide the marital property of the parties.  See Tex.R.App.P.
46.5.

 

January
12, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.











[1]
Mr. Pickett testified that the information he was testifying to was not the
result of an audit, but rather the results to an analysis he was able to make
based on the information he was provided with.





[2]
On appeal, Mr. Burney argues that the $16,000 interest awarded to him is
rendered valueless by the trial court=s
failure to provide for the accrual of a reasonable interest rate or for a date
which was computable by the parties for the payment of the award.  However, after the motion for new trial
hearing, the trial court entered an order amending the final judgement and
decree and provided the following:

 

3.         Respondent=s
request for an interest bearing Deed of Trust Note secured by a filed and
recorded Deed of Trust on the residence located at 717 Teresa Drive, Desoto,
Dallas County, Texas shall be executed by the Petitioner and delivered to the
Respondent with the following terms and conditions:

 

A.        The Deed of Trust Note and the Deed of
Trust shall be in a standard form normally utilized in Dallas County, Texas;

 

B.         The Deed of Trust Note in the principal
amount of Sixteen Thousand and No/100 Dollars ($16,000.00) shall be due and
payable on or before the first to occur of the following numbered events:

 

1.         The graduation or withdrawal from high
school of Savanna Burney and the eighteenth (18th) birthday of Savanna
Burney on March 18, 2017, whichever is the last to occur, or

 

2.         The emancipation of Savanna Burney, or

 

3.         The death of Savanna Burney.

 

C.        The Deed of Trust Note shall bear
interest at the rate of six percent (6%) per annum until paid in full, and
shall contain the standard provisions for installment payment acceleration,
interest at ten (10%) percent after default, attorney fees, cost, and the other
standard default and election provisions normally included in such deed of
trust notes;

 

C [sic]. The Deed of Trust shall incorporate the Deed of
Trust Note, and shall contain the standard provisions...normally contained in
such deeds of trust . . . .





[3]
There is ample support in the case law for an error in dividing property
incident to divorce (which would ordinarily require an appellate court to
reverse and remand for a new property division) being cured by remittitur.  See e.g., Torrey v. Cameron, 73
Tex. 583, 11 S.W. 840, 843 (Tex. 1889); McKnight, 543 S.W.2d at 867 (at
least impliedly endorsing); Schlueter v. Schlueter, 975 S.W.2d 584, 589
(Tex. 1998)(again, at least impliedly endorsing); Dietz v. Dietz, 540
S.W.2d 418, 420‑21 (Tex.Civ.App.‑‑El Paso 1976, no writ), disapproved
on other grounds, Eggemeyer, 554 S.W.2d at 142; Matter of the
Marriage of Moore, 890 S.W.2d 821, 843 (Tex.App.‑‑Amarillo
1994, no writ).