Opinion issued
December 13, 2007 






 

 










In The

Court
of Appeals

For
The

First
District of Texas







NO.
01-06-01037-CV 

____________

HENRY
CLEBURNE
MCMICHAEL, IV, Appellant

V.

JACKIE MCMICHAEL, Appellee







On
Appeal from the 311th District Court

Harris County, Texas

Trial
Court Cause No. 2003-44907







MEMORANDUM
OPINION

Appellant, Henry McMichael, IV,
challenges the trial court's August 25, 2006 "Modification Order in Suit
Affecting the Parent-Child Relationship," in which the trial court increased child support in
favor of appellee, Jackie McMichael. (1) In two
issues, Henry contends that the trial court abused its discretion in finding
that a material and substantial change in circumstances warranted an increase
in child support and in finding that Henry had net monthly resources of at
least $4,300.

We affirm.

Factual
and Procedural Background

Henry testified that he and Jackie divorced
on October 17, 2003. The divorce decree provided that Henry must pay Jackie
$700 in child support for their two children. Henry works for Owan Mechanical,
and his tax returns show that he made $50,197 in 2003. In 2004, he made
$51,856, $41,518 in wages and $10,338 in rents and royalties. About $6,000 was
withheld as federal income taxes. Henry did not produce any tax returns for the
years 2005 and 2006, but asserted that in 2005, he made "roughly"
$57,000, and in 2006, he was making "[a]bout the same, maybe a little bit
more." He did acknowledge, however, that from March 10, 2004 through April
11, 2005, excluding two bank statements from September 11, 2004 through
November 9, 2004, which Henry failed to produce, his total cash deposits in his
Wells Fargo checking account totaled $83,866.64. He explained that his bank
deposits were above his salary because, in 2004, he received a check for
royalties that was worth "between" $6,000 to $8,000. Also, in 2005,
he borrowed "[a]round" $7,000 from his retirement account and
deposited it into his checking account. When further asked to explain the
discrepancy between his cash deposits and monthly income from his job, he
stated that he took out personal loans from his family, which amounted to
"probably" $20,000.

On cross-examination, Henry
contradicted himself, first stating that he only took two separate loans for
$11,000 and $4,000 from his parents. He did not remember which month or year
that he took out the $11,000 loan or when he deposited the money into his
checking account. He did remember taking out the $4,000 loan in 2004. Henry
further asserted that he received a loan in 2004 for $10,000 from Citi
Financial, but he acknowledged that none of his bank statements showed a
$10,000 deposit. He subsequently asserted that the Citi Financial loan was the
only loan he took out in 2004, but, for the first time, he testified that he
received a "gifted inheritance" of "at least $10,000 or
more." When asked why he did not produce any information "regarding
gifts or loans" in a November 24, 2004 request for production, Henry did
not offer any explanation. Also, he did not produce any information verifying
that he had taken out loans in 2004 and 2005. Henry explained that these loans
were given to him via checks. He would cash the checks "at the banks to
where I received the checks from" and only then would he deposit the money
into his checking account. 

Henry further testified that the
deposits above his salary were from receiving oil royalties of about $2,500 a
year. He also stated that he sold "[a]fter 2004" real property worth
"somewhere in between" $6,000 to $7,500, later stating that he
"believe[d]" $7,500 was right. Henry acknowledged that none of his
bank statements showed a $7,500 deposit. When asked why he testified in a
deposition in 2005 that he actually sold the real property in 2003, he stated,
"I did state that some of it was at that time. I said around a year ago
maybe. I couldn't remember the exact dates because not all the property was
sold at the same time, and one of the properties was sold while I was
overseas." When asked if he was making any money on the side from John
Lofton, a friend who works in the same line of business, Henry stated that
although he has "helped" Lofton "a couple of times," he never
received any money from Lofton. He did concede that he had "probably"
made about $1,500 from side jobs since the divorce. 

Jackie testified that she believed
that Henry had a side job with Lofton because Henry had side jobs in the past
and his deposits in his checking account have increased, even though his
reported income has decreased. She is aware that Henry has borrowed money from
his parents, although she does not know the amount. Jackie explained that she
needed an increase in child support because the children's expenses have
increased since the divorce. Specifically, "the kids are in school now.
They have child care. They have supplies they need and the fact that he's just
making more money and it shows in his bank statements." The boys also play
baseball and football, and based on their monthly activities in these sports,
it costs her $100 a month. Since the divorce decree, she traded in her 1995
Toyota Tercel for a 2004 truck, and her gasoline bill has doubled. Her food
bill for the boys has also increased. At the time of the divorce, she was in
school, not making any money. She currently makes only $400 a month, and takes
out loans to attend Kingwood
 College. She believes
that Henry has net resources of over $6,000 a month and asked for $1,500 a
month in child support.

On August 25, 2006, the trial court
ordered Henry to pay increased child-support payments of $1,075 per month to
Jackie. The trial court also signed findings of fact and conclusions of law. (2) Among its findings of fact, the trial court found
that the "circumstances of the child or a person" had
"materially and substantially changed" and that Henry has net
resources totaling "not less than $4,300 per month." Among its conclusions
of law, the trial court determined that it had good cause to increase Henry's
child support to $1,075 per month.

Modification

In his first issue, Henry argues
that the trial court abused its discretion in finding a material and
substantial change in circumstances because Jackie did not present
"evidence of the parties' financial condition both at the time of the
order to be modified and at the time of the hearing." In his second issue,
Henry also argues that the trial court abused its discretion in finding that he
had net monthly resources of at least $4,300 because "[t]he only evidence
of [his] income during 2006 is his testimony that he earns $26.01 per hour and
usually works 40 hours a week." He asserts that "[a]t that rate, [he]
would earn a little over $54,140 per year" and "monthly wages of
$4,508 would represent his 'resources,' not his 'net resources,'" after
subtracting expenses for taxes and health insurance.

Generally, a complaining party must
show that a trial court's support order constitutes a clear abuse of discretion
in order for it to be disturbed on appeal. Worford v. Stamper, 801
S.W.2d 108, 109 (Tex.
1990). A trial court abuses its discretion when it acts without reference to
any guiding rules and principles. McGuire v. McGuire, 4 S.W.3d 382,
384 (Tex. App.--Houston [1st Dist.] 1999, no pet.); Holley v.
Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.] 1993,
writ denied). In the child-support context, sufficiency challenges are not
independent points of error, but are "incorporated into an abuse of
discretion determination." McGuire, 4 S.W.3d
at 387 n.2; see Burney v. Burney, 225 S.W.3d 208, 214 (Tex.
App.--El Paso 2006, no pet.). Our analysis employs a two-pronged inquiry: (1)
Did the trial court have sufficient information upon which to exercise its
discretion; and (2) did the trial court err in its application of discretion? McGuire, 4 S.W.3d
at 387 n.2. 

A court may modify a child-support
order if "the circumstances of the child or a person affected by the order
have materially and substantially changed since . . . the date of the order's
rendition." Tex. Fam. Code Ann. §
156.401(a)(1)(A) (Vernon
Supp. 2007). When determining the necessity of modifying child support, the
trial court should compare and examine the circumstances of any minor children
and the parents at the time of the original order with the circumstances
existing at the time the movant seeks to modify the order. Hardin v.
Hardin, 161 S.W.3d 14, 21 (Tex. App.--Houston [14th Dist.] 2004, no
pet.), vacated, No. 14-03-00342-CV, 2005 WL 310076 (Tex.
App.--Houston [14th Dist.] Feb. 10, 2005, no pet.) (mem. op.). The trial court
has broad discretion in determining child-support payments and in modifying
those payments. Id. When ruling
on a child-support modification, a court must consider, among other factors:
(1) the needs of the child, (2) the ability of the parents to contribute to the
child's support, (3) any financial resources available for support, and (4) the
amount of possession and access to the child. Tex. Fam. Code Ann. § 154.123 (Vernon 2002).


If the requisite material and
substantial change in circumstances appears, the trial court may alter a
party's child-support obligation. See In re Hamer, 906
S.W.2d 263, 265 (Tex. App.--Amarillo 1995, no writ). In regard to a
child-support award, section 154.062 provides that a court "shall
calculate net resources for the purpose of determining child support liability
as provided by this section." Tex. Fam.
Code Ann. § 154.062(a) (Vernon
Supp. 2007). "Net resources" includes all wage and salary income,
self-employment income, and all other income actually being received. Id. §
154.062(b) (Vernon
Supp. 2007). Section 154.063 also provides that "[t]he court shall require
a party to . . . furnish information sufficient to accurately identify that
party's net resources and ability to pay child support." Id. § 154.063 (Vernon 2002); Garner v.
Garner, 200 S.W.3d 303, 306 (Tex.
App.--Dallas 2006, no pet.). Section 154.125 provides the appropriate
guidelines for when an obligor's net resources are $7,500 or less. Tex. Fam. Code Ann. § 154.125 (Vernon Supp. 2007). Henry first asserts that
the trial court abused its discretion in finding that a material and
substantial change occurred in the circumstances of a child or a person since the
court's prior child-support order. In Giangrosso v. Crosley, this
Court held that a "parent's testimony showing a substantial increase in
the designated expenses for a child can be legally sufficient evidence to
support a trial court's finding of a material and substantial change in the
situation of the child." 840 S.W.2d 765, 769 (Tex. App.--Houston [1st
Dist.] 1992, no writ). Testimony on "increased costs [for] clothing and
sporting activities . . . . alone could serve as evidence that the child's situation
has so substantially changed as to warrant an increase in child support
obligations." Id.; see also
Hamer, 906 S.W.2d at 267 (noting that three children, instead of
one as in Giangrosso, made obligee's testimony even
more "probative"). Here, Jackie testified that the expenses of her
two children had increased because (1) they are now in school and need
supplies, (2) they need child care, (3) they participate in recreational
activities, resulting in a higher gas bill from driving her children around, and
(4) they have higher food costs. In Giangrasso, based on
similar facts, this Court found sufficient evidence to support the trial
court's finding of a material and substantial change in a child's
circumstances. 840 S.W.2d at 769; see also Bagot v. Bagot, 602
S.W.2d 334, 336 (Tex. Civ. App.--Texarkana 1980, no writ) (holding that because
record revealed at time of modification hearing that "there had been a
substantial increase in the child's expenses, [obligor's] income had increased,
and [obligee's] income had not changed materially," increase of child
support was justified). Jackie provided some evidence of a substantive and
probative character which supported the trial court's decision. See Farish
v. Farish, 921 S.W.2d 538, 541 (Tex. App.--Beaumont
1996, no writ). Accordingly, we hold that the trial court did not
abuse its discretion in finding that there was a material and substantial
change in circumstances.

Henry next asserts that the trial
court abused its discretion in finding that he had monthly net resources of at
least $4,300, instead of $3,500 or less. He does not dispute the trial court's
application of the child-support guidelines, stating in his appellate brief,
"Based on its finding that [he] had net monthly resources of $4,300 or more,
the trial court applied the guidelines of section 154.125 and ordered him to
pay 25% of $4,300, or $1,075 per month in child support." 

In Burney, the trial
court properly determined that the obligor had higher net resources than his
tax returns showed, based on the obligee's testimony and the obligor's
inability to account for deposits in his banking account above his monthly
salary. 225 S.W.3d at 214. Here, bank statements showed, and Henry admitted,
that from March 10, 2004, through April 11, 2005, he had made deposits totaling
$83,866.64 into his Wells Fargo checking account. The only documentation that
Henry presented to the trial court of his income in 2004 through 2006 showed
that in 2004, he had take-home pay of approximately $35,500 and approximately $10,000
in rents and royalties. On direct-examination, he stated that in 2004, he had
received $20,000 in loans from his parents. However, on cross-examination, his
testimony was inconsistent. He admitted at one point to having, in 2004, only
one loan from Citi Financial for $10,000, but at another point, he explained
that he received $15,000 or less in loans from his parents in 2004. He noted
that he received a $11,000 loan and a $4,000 loan, but he could not remember
the year in which he had deposited the proceeds from the $11,000 loan. He did,
however, admit to receiving the $4,000 loan in 2004. On recross-examination,
for the first time, Henry then asserted that he had received an inheritance
gift of "at least $10,000 or more." When asked in a request for
production to produce information "regarding gifts or loans," he did
not inform Jackie of any gifts or loans. Moreover, Henry did not produce any
documentation at trial to verify these loans. 

Henry testified that in 2005, he
made roughly $57,000 and, after 2004, he received $7,500 in proceeds from a
land transaction. However, on cross-examination, he conceded that he had
previously testified in a deposition that he had received the proceeds in 2003.
He also stated that he took out a $7,000 loan from his retirement account.
Again, Henry did not produce any documentation to verify the land transaction
or loan. Jackie testified that Henry customarily performed side jobs. 

The trial court, as the
fact-finder, was free to disbelieve Henry's testimony that the money deposits
above his salary in his checking account were from unverifiable loans, and it
was free not to accept his testimony about his income and net resources. See Garner, 200
S.W.3d at 308 (reasoning that trial court "was not required to accept
[obligor's] evidence of his income and net resources"); Hardin, 161
S.W.3d at 23 (noting that trial court need not accept obligor's evidence of his
income and net resources "as true"). Although the Family Code
required Henry to produce financial information supporting his claims about his
income, he failed to do so. See Garner, 200
S.W.3d at 308 ("Although required to do so by the [F]amily
[C]ode . . ., [obligor] produced no financial information to
support his claims regarding his income."). Also, the trial court was free
to deem Henry's deposits as more probative of his net resources than his
reported income. See Burney, 225 S.W.3d
at 214. Accordingly, we hold that the trial court did not abuse its discretion
in finding that Henry's net resources were "not less than $4,300 per
month."

We overrule
Henry's first and second issues.

Conclusion

We affirm the judgment of the trial court. 

 

 

Terry Jennings

Justice





Panel consists of
Justices Nuchia, Jennings,
and Keyes. 

1. See Tex. Fam. Code Ann. § 156.401(a)(1)(A) (Vernon Supp. 2007). 

2. The trial court signed two
sets of findings of fact and conclusions of law, one on October 30, 2006 and
the other on November 1, 2006.