In the Matter of the MARRIAGE OF Mary Lynn HAMER and Dennis Roy Hamer and in the Interest of Wesley Edward Hamer, Lori Ann Hamer and Teri Lynn Hamer.

No. 07–95–0022–CV.

Court of Appeals of Texas, Amarillo.

Sept. 13, 1995.

Rehearing Overruled Oct. 10, 1995.

Darnell & Seymore, William Everett Seymore, Lubbock, for appellant.

Wagonseller, Cobb & Harkey, Joanna L. Harkey, Lubbock, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

Dennis Roy Hamer (D. Hamer) appeals from an order modifying his monthly child support obligations. He asks, in three points of error, whether the evidence was legally and factually insufficient to support modifica-

tion and whether the court improperly considered his spouse's income in arriving at its decision. We answer no and affirm.

## LAW

■ A court may modify a parent's child support obligation upon proof that the circumstances of the child or parent have materially and substantially changed. *Tex.Fam. Code Ann.* § 14.08(c)(2) (Vernon Supp.1995). Whether to do so, however, lies within the jurist's broad discretion. *Giangrosso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.— Houston [1st Dist.] 1992, no writ); *see Rodriguez v. Rodriguez,* 860 S.W.2d 414, 415 (Tex. 1993) (holding that the trial judge has discretion in setting child support). The exercise of that discretion will not be overturned unless clearly abused. *Rodriguez v. Rodriguez,* 860 S.W.2d at 415. Furthermore, such abuse occurs when the judge acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).[1] Conversely, no abuse occurs when probative evidence underlies the decision. *Thomas v. Thomas,* 895 S.W.2d 895, 896 (Tex.App.—Waco 1995, no writ).

■ Should the requisite changed circumstances appear, the court may then alter the child support obligation. The extent of the alteration too lies within the court's discretion. *Id.* Various guidelines used in regulating that discretion appear in section 14.053 of the Texas Family Code. The first mandates that the support order be "based on the 'net resources' of the obligor and obligee." *Tex. Fam.Code Ann.* 14.053(a) (Vernon Supp. 1995). The term "net resources" includes all personal service income, interest, dividends, royalty income, self-employment income, net rental income and "all other income actually being received." *Id.* at 14.053(b). In turn, self-employment income encompasses "benefits allocated to an individual from a business or undertaking in the form of a proprietor-ship, partnership, joint venture, close corporation, agency, or independent contractor, less ordinary and necessary expenses required to produce that income." *Id.* at 14.053(c).

■ Several other pertinent rules also exist. They enable the judge to "consider *any* additional factors that increase or decrease the ability of the obligor to make child support payments" such as the amount of income reasonably attributable the debtor's assets, including his business and its assets. *Id.* at 14.053(e). So too may it weigh the earning potential of the parent if he or she is voluntarily under- or unemployed, *id.* at 14.053(f); *Giangrosso v. Crosley,* 840 S.W.2d at 769–70; *LeBlanc v. LeBlanc,* 761 S.W.2d 450, 454 (Tex.App.—Corpus Christi 1988, writ denied), as well as gifts from in-laws. *Tex.Fam.Code Ann.* 14.053(b); *Roosth v. Roosth,* 889 S.W.2d 445, 454 (Tex.App.— Houston [14th Dist.] 1994, writ denied).

## FACTS

The record at bar reveals that Dennis and Mary Lynn Hamer divorced on July 18, 1985. The two were parents of three children at that time. The youngest was approximately four and the oldest, about eight. Originally ordered to pay $375 per month, D. Hamer succeeded in having the payments reduced. When Mary Lynn petitioned for the modification which resulted in this appeal, she was receiving only $180 per month from her ex-husband. That payment was supplemented by her own monthly income approximating $1,200. The total was not enough, she claimed, to provide for her offspring.

Experiencing financial difficulties, Mary Lynn "shuffl[ed] bills" to "make ends meet each month." Her sister, who was "not too financially set either," assisted when she could. The children also helped with the money they made. Yet, because they were growing, the now teenage and near teenage

---

1. Given this standard of review, the legal or factual sufficiency of the evidence underlying the decision cannot be invoked as *independent* ground for reversal. *Thomas v. Thomas,* 895 S.W.2d 895, 896–98 (Tex.App.—Waco 1995, no writ). Yet, either or both claims may be asserted in relation to whether the court abused its discretion. For example, acting without sufficient evidentiary basis may evince abused discretion, depending upon the other factors influencing the court's decision. Thus, we do not consider D. Hamer's sufficiency points separately but rather as part of the entire amalgam weighed in deciding whether discretion was abused.

children necessitated more food and clothes for which she could not pay. That the sixteen year old had to forego participation in driver's education due to buying a school related uniform was an example of the rather dire financial circumstances encountered by the family. So too were the occurrences of the two eldest buying their own school supplies from monies earned during the summer and the oldest buying his own clothes mentioned as an example of their plight. Another instance concerned the youngest child and the "real bad crowding in her mouth" and "really, really crooked teeth." That condition required orthodontic attention which approximated $4,380.[2]

Moreover, since the divorce, D. Hamer had never paid any of the children's medical bills. It had also been more than several years since he had purchased clothing for them.

In response to the evidence proffered by Mary Lynn, her ex-husband claimed a personal income no greater than four to five thousand dollars for each of the last five years. His income apparently came from his automotive business which enjoyed gross sales in 1993 of $159,000, a $92,000 increase from the $67,000 worth of sales in 1988. Though the evidence failed to illustrate the expenses incurred by the business in 1988, 89, 90, 91, and 92, it did indicate those for 1993. They included a combined sum of $37,652 paid to his two mechanics, $15,016 to his new wife, $4,200 for a freon recovery system, $200 for auto insurance on the truck provided D. Hamer by the business, and $4,400 for medical insurance. Unspecified sums for gas and auto maintenance related to his use of the "company" truck and his wife's vehicle as well as an accountant's bill were also expended. Some or all of the remaining money went to purchase and accumulate inventory, the value of which D. Hamer did not know.

The evidence also showed that though he claimed sales of $159,000 on his tax return, another $5,000 was deposited into the business account. The difference allegedly represented proceeds of accounts receivable created during a prior year. A similarly explained discrepancy, though of only $2,500, occurred in 1992.

Given his purportedly *de minimis* income, D. Hamer's new wife paid most if not all the household expenses, including the mortgage, utilities, and groceries. Yet, the actual amount of those payments were not susceptible to verification since neither the appellant nor his wife had a checking account. They paid everything with money orders. Furthermore, the difference between the household expenses and income allegedly available to pay same, that is, $700 a month, was funded by "loans" from her grandfather or parents. Those very same individuals also gave their daughter and son-in-law the large screen television and swimming pool they enjoyed.

Yet, D. Hamer's income was not always as meager as he now portrayed. Trained though not certified in automotive mechanics, he was once employed by a local car dealership to repair transmissions and received $12.00 per hour. Deeming it not enough, he voluntarily quit to become a farm hand. That job too did not satisfy him. So, he opened Hamer Automotive. Next, he professed that he could not earn more than he did. The reasons offered to support that proposition were his lack of a certification as automotive mechanic and purported reading and comprehension difficulties. Yet, cross-examination revealed that he never attempted to gain a mechanic's certification. Nor did the evidence show that he attempted to, but could not, improve his limitations and enhance his skills by attending school himself. He had done so before divorcing Mary Lynn.

**2.** Interestingly, D. Hamer was willing to pay for the cost incurred in addressing his own dental problems. Yet, he argued that the condition of his daughter's teeth did not warrant further support because "[s]he's not going to die if she has crooked teeth." We found no authority conditioning the court's ability to raise support upon the child's proximity to death. Nor do we be-lieve that the court's power should ever be so restricted, contrary to Mr. Hamer's insinuation. *See Rodriguez v. Rodriguez,* 860 S.W.2d 414, 417 n. 3 (Tex.1993) (stating that the needs of a child, for purposes of support, are not limited to the bare necessities of life); *accord, Thomas v. Thomas, supra.*

## APPLICATION

### a. Material and Substantial Change

 A parent's testimony showing a substantial increase in the designated expenses of a child is enough to establish a material and substantial change in circumstances. *Giangrosso v. Crosley,* 840 S.W.2d at 769. In *Giangrosso,* the father stated that his son, who was only two at the time of divorce, had become eleven and that it was more expensive to care for an eleven year old. "[G]iven his son's age, he must now pay for such increased costs as clothing and sporting activities." *Id.* "Th[at] testimony alone," according to the court, "could serve as evidence that the child's situation has so substantially changed as to warrant an increase in child support obligations." *Id.*

Mary Lynn's testimony was as, if not more, probative than the father's in *Giangrosso.* Instead of one ward, she had three. Two had grown from mere children to teenagers since the divorce while the third would soon be a teenager. They, like the *Giangrosso* boy, also experienced need for additional clothes and food. They too participated in school activities which depleted family resources. Indeed, one had to forego driver's education to pay for a uniform, and the two eldest bought either their own clothes or school supplies because their mother could not. Finally, like the eleven year old in *Giangrosso,* the twelve year old here faced the inevitable prospect of braces. These circumstances established the "change" prerequisite to the court's modifying the support obligation.[3] *See Arndt v. Arndt,* 685 S.W.2d 769, 770 (Tex.App.—Houston [1st Dist.] 1985, no writ) (holding the same under similar facts). Thus, ample evidence and reason underlies the trial court's implicit finding of materially changed circumstances.

### b. Amount of Support

 Having found it warranted, the court raised the support payments from $180.00 to $367.50 a month. It did so after finding that D. Hamer had monthly net resources of $1,226.50. Mr. Hamer argued, however, that the court derived the figure by considering his new wife's income which statute prohibits. We disagree.

Admittedly, the trial judge did not itemize the components underlying the $1,226.50 figure. Nonetheless, that is not fatal since the record supports the sum found without including the new wife's income.

For instance, D. Hamer quit a job as a transmission mechanic which paid $12.00 per hour to assume the duties of a farmhand. He then left the farm to open his own business. Neither of the latter two jobs provided as much income as the first. Yet, he voluntarily left the first to pursue the second and third and then opted to forego other employment. That D. Hamer may have sought to better his lot did not entitle him to do so at the expense of his children. Indeed, statute empowers the court to determine his net resources in relation to his earning potential rather than actual earnings. *Tex.Fam.Code Ann.* § 14.053(f); *Giangrosso v. Crosley,* 840 S.W.2d at 769–70; *LeBlanc v. LeBlanc,* 761 S.W.2d at 454; *see In re Miller,* 600 S.W.2d 386, 389 (Tex.Civ.App.—Amarillo 1980, no writ) (allowing consideration of earning potential). Since the appellant voluntarily ended prior employment, took lesser paying jobs, and opted to remain in the lesser paying jobs despite the needs of his offspring, the trial court was entitled to assess his income based on his earning potential.

Thus, the trial judge could well have estimated D. Hamer's earning potential *vis-a-vis* his previous $12.00 an hour paycheck. In multiplying that rate by a 40 hour work week then by a 50 week year, one derives a poten-

---

**3.** Appellant correctly states that the mere assertion, without proof, of increased expenses does not illustrate changed circumstances. *Payne v. Dial,* 831 S.W.2d 457, 459 (Tex.App.—Houston [14th Dist.] 1992, no writ). Unlike the situation in *Payne,* the present record contained ample evidence of increased expense, inability to pay for courses offered in high school as well as the inability to pay for clothing and school supplies. That children outgrow clothes as they physically mature, expand their social and intellectual activities, and consume greater quantities of food over the years is hardly open to dispute, and the legal recognition of that fact appears to be the implicit holding of *Giangrosso v. Crosley,* 840 S.W.2d 765 (Tex.App.—Houston [1st Dist.] 1992, no writ).

tial gross annual income of $24,000 or $2,000 per month. After factoring the deductions mentioned in the "Employed Persons 1994 Tax Chart" appended to § 14.053 of the Family Code, D. Hamer's net monthly income would be $1,625.12, or about $399.00 *more* than the sum found by the trial judge.

Or, the court could have taken the $5,000 Hamer claimed to have earned. To that the judge could have added the $5,000 deposited in his business account but apparently omitted from tax returns and the $8,400 per year, that is, $700 times 12 months, donated by wife's relatives. *See Roosth v. Roosth, supra.* That would provide yearly income of about $18,400 or $1,535 per month. Factoring the deductions listed in the aforementioned chart results in a net monthly income of over $1,238.00, or $12.00 more than that incorporated in the fact findings.

Or, the court could have well considered the earning potential of Hamer Automotive. Experiencing over a 150% increase in sales since 1988 as well as an expanding inventory, it was and is a profitable asset susceptible to valuation under § 14.053. Indeed, even D. Hamer believed its future bright. Its earning potential, therefore, also constituted probative evidence bolstering the court's determination to award more child support.

Under any scenario, the monthly net resources found by the court comport with the evidence. The decision to raise the child support and the reasons therefor also has evidentiary and legal basis. Thus, it cannot be said that the decision constituted an abuse of discretion.

Accordingly, we overrule the three points of error and affirm the order entered below.