NO. 07-03-0524-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MARCH 21, 2005


_______________________________



IN THE INTEREST OF BRITTANY NICOLE SANDERS 
 _______________________________





FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 63,497-D; HON. DON R. EMERSON, PRESIDING


_______________________________



 Opinion


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Gail Wayne Sanders (Sanders) appeals from an order establishing his parentage
as father of Brittany Nicole Sanders and ordering him to pay retroactive child support of
$52,400, attorney's fees, and court costs. Though not contesting paternity, he nonetheless
attacks the trial court's 1) failure to execute findings of fact and conclusions of law
supporting its determination, 2) award of $52,400 as retroactive support, and 3) award of
$8,000 as attorney's fees. We affirm the judgment of the trial court.

 Background

 The dispute before us involves the attempt by Rolisa Carol Utzman to establish that
Sanders was the father of her child Brittany and obtain retroactive child support. Brittany
was born on November 30, 1984, and Rolisa and Sanders continued to have a relationship
through 1991. Throughout this time and continuing through the date of trial, Sanders was
married to another person. 

 After an evidentiary hearing, the trial court found that the amount of net resources
available to Sanders beginning January, 1991, and continuing through May of 2003, was
in excess of $4,000 per month. It also concluded that Sanders' retroactive child support
was $400 per month for the same period and that he owed Utzman a total of $52,400.

 Issue One - Findings of Fact

 Sanders' first issue involves the trial court's failure to timely execute findings of fact
and conclusions of law. The record discloses that he did ask the trial court to execute
findings of fact and conclusions of law per Texas Rule of Civil Procedure 296. And, though
the trial court did not comply with the request within the time parameters established by the
applicable rules of procedure, it nevertheless executed a set on March 22, 2004. Those
findings have also been made part of the appellate record. Furthermore, Sanders has not
contended that they are deficient; nor has he asked for an opportunity to re-brief the issues
in view of the findings and conclusions. 

 It is clear that we may remedy the trial court's failure to execute findings and
conclusions by abating the appeal, remanding the cause, and directing the trial court to
issue same. Lubbock County Cent. Appraisal District v. Contrarez, 102 S.W.3d 424, 426
(Tex. App.-Amarillo 2003, no pet.). Since the trial court effectuated that remedy sua
sponte, we cannot but hold that Sanders' complaint has become moot. Thus, we overrule
the first issue.

 


 Issue Two - Retroactive Child Support

 Through his second issue, Sanders contends that the trial court abused its discretion
in ordering him to pay $52,400 as retroactive support. This is allegedly so because the
award lacks evidentiary support and the trial court failed to reduce the sum by the support
he had already paid. Moreover, the award supposedly lacks evidentiary support because
the evidence fails to illustrate that his net resources exceeded $4000 per month as found
by the trial court. We overrule the issue. 

 We review the decision of the trial court under the standard of abused discretion. 
See In re Tucker, 96 S.W.3d 662, 668 (Tex. App.-Texarkana 1998, no pet.) (stating that
the courts of appeal review an award of retroactive child support for an abuse of discretion);
Garza v. Blanton, 55 S.W.3d 708, 710 (Tex. App.-Corpus Christi 2001, no pet.) (stating
that whether to award retroactive support and the amount awarded lies within the discretion
of the trial court). Furthermore, whether it properly exercised its discretion depends upon
not only whether it acted with reference to guiding rules and principles, In re Hamer, 906
S.W.2d 263, 265 (Tex. App.-Amarillo 1995, no writ), but also whether the decision enjoys
evidentiary support. See id. at 265 n.1 (holding that while the existence of evidence
supporting the trial court's decision is not an independent ground of attack, it is nonetheless
an indicia to consider when determining if the trial court abused its discretion). Moreover,
we are obligated to view the evidence in the light most favorable to the trial court's decision
and indulge in every presumption favoring the judgment. In re Tucker, 96 S.W.3d at 664-65. 

 Next, should the trial court decide to award retroactive support, it is then free to turn
to the child support guidelines found in Chapter 154 of the Family Code to help in
ascertaining the amount of the award. See Tex. Fam. Code Ann. §154.131(a) (Vernon
2002) (stating that the "child support guidelines are intended to guide the court in
determining the amount of retroactive child support, if any, to be ordered"). And, while
compliance with those guidelines is not mandatory, In re Valadez, 980 S.W.2d 910, 913
(Tex. App.-Corpus Christi 1998, pet. denied), it must nonetheless "consider" the "net
resources" of the father during the relevant time period and whether 1) the mother of the
child had made any previous attempts to notify the father of his paternity, 2) the father had
knowledge of his paternity, 3) the order of retroactive child support will impose an undue
financial hardship on the father or his family, and 4) the father provided actual support or
other necessaries before the filing of the action. Tex. Fam. Code Ann. §154.131(b) (Vernon
2002). Finally, the term "net resources" means all the income received by the obligor, id. 
§154.062(b), but not his losses. In re Grossnickle, 115 S.W.3d 238, 248 (Tex.
App.-Texarkana 2003, no pet.); Fanning v. Fanning, 828 S.W.2d 135, 150 (Tex.
App.-Waco 1992), rev'd on other grounds, 847 S.W.2d 225 (Tex. 1993) (involving the
similarly worded predecessor to §154.062(b) of the Family Code).

 The evidence of record contains both the joint tax returns filed by Sanders and his
wife during the years 1991 through 2001 and a summary of those returns. They illustrate
that the couple had income totaling $1,261,748 for the ten-year period. Moreover, dividing
the sum by ten results in an average annual income approximating $126,175. See Norris
v. Norris, 56 S.W.3d 333, 341-42 (Tex. App.-El Paso 2001, no writ) (holding that the trial
court did not abuse its discretion in determining monthly resources by averaging the
obligor's income over a period of time). And, while Sanders testified that most of the
income was earned by his wife or from her separate property, the trial court was free to
disbelieve him. (1) So, it could well have decided to attribute the entire amount to him. (2)

 Next, given an average annual income of $126,175, and in view of the guidelines
appearing in §154.061 of the Family Code (which guidelines are used in calculating net
monthly income), one could reasonably conclude from the record before us (and assuming
that the trial court discredited his testimony about who generated the income) that Sanders
net monthly income was around $7170 for that ten-year period. Finally, the latter sum does
exceed $4000 per month, as found by the trial court. So, we reject Sanders' argument that
there "is insufficient evidence of Appellant's resources to support the judgment . . . ." (3)

 We next address Sander's attack upon the finding wherein the trial court determined
that "the percentage applied to the first $6,000.00 of . . . Sanders' net resources for child
support by the actual order rendered is 16 percent." This argument is premised upon the
allegation that the trial court found Sanders' net resources "to be $4,000.00 not $6,000.00." 
However, the pertinent finding actually states that his net resources were "in excess of
$4,000.00 per month," not simply $4000. Furthermore, the calculations made earlier in this
opinion could have supported a finding that his income approximated $7000 per month. 
Additionally, 16 percent of $7000 and $6000 is $1120 or $960, respectively, and both sums
are far more than the $400 monthly support obligation that the court applied retroactively. 
So, in essence, we cannot see how he was or is harmed by the finding, assuming it is
inaccurate.

 Sanders also posits that the trial court needed to enter findings required by the
Family Code. The findings in question involved some explanation justifying the trial court's
decision to simply not set the support obligation at 20 percent of Sanders' net resources. 
Yet, this argument is premised upon the acceptance of Sanders' testimony that his net
resources were actually far less than $4000 per month. As stated before, the trial court
was entitled to disbelieve him and conclude that his resources were actually greater than
that amount. 

 We next consider the suggestion that the trial court erred in failing to give Sanders
credit for the child support he paid between 1991 and 2001. This argument is founded
upon that portion of the Family Code requiring the trial court to consider whether the obligor
provided actual support or other necessaries to the child before suit was initiated. Tex.
Fam. Code Ann. §154.131(b)(4) (Vernon 2002). And, we reject it for several reasons.

 First, §154.131(b)(4) does not expressly require the trial court to credit an obligor
with past support payments. It simply states that the trial court "shall consider" whether the
obligor provides support or necessaries in ordering retroactive support. Tex. Fam. Code
Ann. §154.131(b)(4) (Vernon 2002). Moreover, the plain meaning of the word "consider"
encompasses the act of thinking about or contemplating something. Merriam-Webster's
Collegiate Dictionary 265-66 (11th ed. 2003). And, requiring one to think or contemplate
about a particular act is a far cry from ordering that the particular act be done. 
Furthermore, inherent in the term is the concept of discretion; that is, while the person told
to think about doing something may have to think about it, the directive leaves the decision
whether to do the thing up to him. And, given this interpretation, we cannot say that the
trial court failed to consider Sanders' prior efforts at support. For instance, the trial court
could have considered whether the houses and car given Rolisa by Sanders were actually
intended to be child support. In so contemplating the matter, it could have recalled the
evidence illustrating that Sanders was living with Rolisa at the time while still married to his
wife. And, had it so recalled that evidence, it could have also concluded that maybe the
house and car were actually provided to facilitate the extramarital relationship, and not to
help out his daughter. 

 Additionally, our analysis of the record (as discussed above) uncovered evidence
that would have supported a finding that Sanders actually had monthly net resources
exceeding $6000, not just $4000. And, to the extent that the trial court was authorized to
presumptively order an obligor to pay 20% of his net resources as child support (as
previously argued by Sanders), it could have found Sanders' retroactive obligation to be
$1200 per month, as opposed to simply $400. (4) Indeed, if it only found that Sanders'
resources were $4000 per month, the trial court could have ordered him to pay $800 per
month in retroactive support. Yet, it merely ordered him to pay $400. Given this, we
cannot say that the trial court failed to "consider" Sanders' prior attempts at support in
determining the amount of retroactive support to award.

 Attorney's Fees

 In his next and last issue, Sanders alleges that the trial court erred in awarding
counsel for Brittany's mother attorney's fees of $8000. This was purportedly error because
the recipient of the fees did not segregate the amount incurred in prosecuting the action to
establish parentage from that related to obtaining retroactive support. Moreover, such
segregation purportedly was required because Sanders admitted to paternity immediately
after he was sued. We overrule the issue.

 Statute provides for the recovery of attorney's fees incurred in establishing
parentage. Tex. Fam. Code Ann. §160.636(c) (Vernon 2002). Furthermore, attorney's fees
may be awarded in any suit arising under Title 5 of the Texas Family Code. Tex. Fam.
Code Ann. §106.002(a) (Vernon Supp. 2004-05). Proceedings to recover retroactive child
support fall under Title 5. See e.g. Tex. Fam. Code Ann. §154.009(a) (Vernon 2002) (a
provision allowing the court to order a parent to pay retroactive child support and falling
under chapter 154 of Title 5 of the Family Code). Thus, attorney's fees may be awarded
in a suit to recover retroactive support. So, because fees are recoverable in both a suit to
establish parentage and to obtain retroactive fees and those were the two claims Brittany's
mother pursued, neither she nor her attorney were obligated to segregate the fees as
alleged by Sanders. 

 Having overruled all issues, we affirm the judgment of the trial court.


 Brian Quinn 

 Justice
1. Indeed, the trial court expressly questioned the credibility of Sanders' testimony at trial. This may
be due to the evidence that even though his estranged wife supposedly owned the assets generating the
income he, nonetheless, exercised extensive control over them and had income generated by them sent to
his own address. 
2. While authority holds that a trial court cannot arbitrarily allot a percentage of community income to
one spouse or another, see e.g., Powell v. Swanson, 893 S.W.2d 161, 163-64 (Tex. App.-Houston [1st Dist.]
1995, no writ), we again note that the trial court had before it evidence indicating that Sanders, as opposed
to his wife, operated the businesses which generated the income and had much of that income sent to his own
mailing address. Furthermore, he had sufficient monies to allegedly buy homes for his child's mother,
renovate those homes, buy $70,000 worth of ostriches, buy and give cars to the mother of his child, and buy
a quarter of a million dollars worth of cars while supposedly having little income of his own. This provides
some evidence upon which the trial court could have reasonably allotted the income appearing on the tax
returns to Sanders. 
3. In so holding we again note that business losses (other than those suffered by a self-employed
individual) are excluded when determining an obligor's net resources. In re Grossnickle, 115 S.W.3d 238, 248
(Tex. App.-Texarkana 2003, no pet.); Fanning v. Fanning, 828 S.W.2d 135, 150 (Tex. App.-Waco 1992) rev'd
in part on other grounds, 847 S.W.2d 225 (Tex. 1993). So, while the tax returns indicated that Sanders had
little income for tax purposes due to losses he suffered, that does not mean that he had little income for
purposes of determining his child support obligation. See Powell v. Swanson, 893 S.W.2d 161, 163 (Tex.
App.-Houston [1st Dist.] 1995, no writ) (noting the difference between calculating resources for income tax
purposes and calculating them for purposes of child support). And, to the extent he posits that various of the
losses were actually losses experienced while self-employed, the trial court could have rejected the
proposition that he was self-employed. Sanders did admit to being the vice-president of Cottonwood Cove
Investment Corporation, a corporation through which he conducted many business transactions. Furthermore,
while he also suggests that his auto and real estate businesses were his own, he fails to cite us to evidence
illustrating that they were sole proprietorships as opposed to corporations. And, if they were the latter, then
he cannot be considered self-employed when operating them, given the separate identity of a corporate entity. 
4. Twenty percent of $6000 is $1200.