

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00375-CV

IN THE MATTER OF THE MARRIAGE OF ROBERT FEATHERSTON
AND LINDSEY FEATHERSTON AND IN THE INTEREST OF H.L.F., A CHILD

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2021543005, Honorable Drue Farmer, Presiding

August 9, 2023

OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Lindsey Featherston, appeals the trial court's order granting a divorce from appellee, Robert Featherston.[1]  We address whether the trial court abused its discretion by (1) calculating child support, (2) failing to award retroactive child support, (3) confirming child support arrearages, (4) denying attorney's fees and expenses incurred in a motion to enforce child support, and (5) ordering a geographical restriction.  We affirm the decree of divorce in part and reverse and remand in part.

---

[1] No appellee's brief was filed.

## BACKGROUND

Lindsey[2] and Robert were married in October of 2015 and resided in Levelland. The couple has one child, H.L.F. In March of 2020, the couple separated, and Robert moved to Lubbock. Robert filed for divorce on January 29, 2021, and Lindsey filed a counter-petition. The parties agreed to temporary orders which included provisions for Robert to make child support payments and Lindsey to carry health and dental insurance. Lindsey subsequently filed a motion for enforcement and contempt alleging that Robert had failed to make timely and full payment of child support. At a final hearing, the trial court simultaneously heard evidence on the motion to enforce and the divorce proceeding.

After hearing the testimony, the trial court granted the parties a divorce, divided the property, and made orders concerning the child, including among other things, conservatorship, possession and access, child support, child support arrearage, and health and dental insurance. Lindsey and Robert were appointed as joint managing conservators of H.L.F. with Lindsey having the right to determine the child's primary residence. The trial court granted a residency restriction to Hockley County and contiguous counties and ordered the parties to exchange the child in Lubbock. Robert was ordered to pay child support in the amount of $1,128 per month.

The trial court issued findings of fact and conclusions of law. Lindsey timely filed this appeal.

---

[2] Because the parties share a surname, we will refer to them by their given names for clarity.

STANDARD OF REVIEW

Most of the appealable issues in a family law case, including the issues in this case, are evaluated against an abuse of discretion standard. *See Rivas v. Rivas,* 452 S.W.3d 49, 54 (Tex. App.—El Paso 2014, no pet.). When we review a family law case under the abuse of discretion standard, challenges to the sufficiency of the evidence do not constitute independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *8 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.) (citing *Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, "we engage in a two-pronged inquiry: (1) [d]id the trial court have sufficient evidence upon which to exercise its discretion and (2) [d]id the trial court err in its application of that discretion?" *Id.* (quoting *Boyd*, 131 S.W.3d at 611). The trial court's exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re Marriage of Hamer*, 906 S.W.2d 263, 265 (Tex. App.—Amarillo 1995, no writ).

Because of the fact-intensive nature of reviewing family law issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor because the child's and parents' behavior, experiences, and circumstances are conveyed through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez,* 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet). In

determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. *See* TEX. FAM. CODE ANN. § 153.002.[3]

**APPLICATION AND ANALYSIS**

**Issue One: Child Support Award**

By her first issue, Lindsey contends that the trial court abused its discretion in calculating Robert's child support obligation.

The Texas Family Code provides a set of guidelines that are "intended to guide the court in determining an equitable amount of child support," and which are rebuttably presumed to be in the best interest of the child. §§ 154.121, .122. When, as here, the parties have one child and the obligor's monthly net resources are not greater than $9,200 a month, the guidelines provide that a court should presumptively set child support at twenty percent of the obligor's monthly net resources. § 154.125(b). Under the Family Code, net resources include, among other things, "100 percent of all wage and salary income" including overtime pay. § 154.062. A trial court may, however, determine that application of the guidelines would be unjust or inappropriate under the circumstances, and order child support in an amount other than that established by the guidelines if "the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." § 154.123(a). When making that determination, the trial court may consider certain specified factors including "the cost of travel in order to exercise possession of and access to a child . . . ." § 154.123(b)(14).

---

[3] Further references to the Texas Family Code will be to "section __" or § __."

4

The trial court heard testimony that Robert had several job changes since the parties separated. Since November of 2021, he has been employed by NextEra as a wind technician in Seymour, Texas, earning $38 per hour. This job gives him the flexibility to potentially move back to the Lubbock area so that he can see his son more often. Robert testified that his employer would allow him to work around his visitation schedule. According to Robert, his income fluctuates and his overtime hours are not guaranteed. Robert submitted two pay stubs into evidence, representing nine pay periods, with year-to-date earnings of $40,978 through April 22, 2022. These pay stubs show that Robert receives substantial overtime pay. He agreed to maintain his employer-provided health and dental insurance for H.L.F. at the current monthly cost of $171.28.[4]

The trial court's order requires Robert to pay monthly child support of $1,128, and includes findings, in pertinent part, that Robert has net resources of $5,640 per month and the applicable child support percentage is twenty percent. In its findings of fact, the court specified that, in computing the amount of child support under the guidelines, it considered Robert's cost of travel in exercising his periods of possession and access to the child. *See* §§ 154.125, .129.

In her brief,[5] Lindsey's calculation of child support assumes that Robert will continue to receive the same overtime pay, more than $12,800 in the first four months of

---

[4] The cost of the monthly health and dental insurance carried by Robert during the temporary orders was $94. At trial, Lindsey unequivocally agreed to use the current cost of health and dental insurance in the amount of $171.28 in calculating Robert's child support. We, likewise, do the same.

[5] Lindsey calculates child support based on an annual gross income for Robert of $118,381.64 (representing $40,978.25 year-to-date earnings projected through the end of the year), an average monthly gross of $9,865.13, less section 154.061 amounts, less $94 as the cost of health and dental insurance from a previous employer, resulting in net resources of $7,344.14. According to Lindsey's calculation, Robert's child support should be $1,484.30. We have revised the amount of child support to reflect the current cost

the year, throughout the year. However, the trial court heard evidence from Robert that his overtime pay fluctuates and that he anticipated receiving less or no overtime because he will be working from his home base around his visitation schedule.[6] The trial court also heard evidence that Robert had been exercising his periods of possession "a couple of times a month" and sometimes takes off work on Friday and uses a vacation day to pick up H.L.F. from school. On occasion, he has returned H.L.F. to school on a Monday, depending on his work schedule. This evidence is sufficient to rebut the presumption that application of the guidelines is appropriate in this case. §§ 154.122, .123. Although there is a slight variance of $340.22 between the amount of child support ordered by the trial court ($1,128) and the amount Lindsey requested ($1,468.82), the trial court considered Robert's cost of travel incurred in order to exercise his visitation in arriving at its calculation. This finding was not challenged by Lindsey. Unchallenged fact findings are binding on an appellant. *In re S.E.K.,* 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied); *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (unchallenged fact findings are binding on appellate court unless contrary is established as matter of law or there is no evidence supporting finding); *Sanders v. Merritt,* No. 03-17-00085-CV, 2017 Tex. App. LEXIS 7207, at *9 (Tex. App.—Austin Aug. 2, 2017, no pet.) (mem. op.) (deferring to unchallenged findings that were supported by some evidence).

---

of health and dental insurance in the amount of $171.38 per month. According to our calculation, using Lindsey's figure for net resources, Robert's child support is $1,468.82.

[6] Had the trial court not considered any overtime pay, the child support calculation would be $1,018 ($38 per hour times 40 hours per week equals an average annual gross of $79,040). Thus, in calculating net resources of $5,640, the trial court included some amount of overtime pay.

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). We conclude that the trial court had legally and factually sufficient evidence on which to exercise its discretion when making its child support order and that it did not err in the application of that discretion. Accordingly, we overrule Lindsey's first issue.

## Issue Two: Retroactive Child Support

In her second issue, Lindsey complains the trial court abused its discretion in failing to award retroactive support to November 1, 2021, when Robert started a new job. As to this issue, Lindsey presented no evidence at the hearing regarding whether child support should be ordered retroactively. Moreover, Lindsey did not request retroactive child support and expressly testified, through questioning by her counsel, that she was asking for child support to begin May 1, 2022. *See In re C.S.,* No. 11-12-00294-CV, 2014 Tex. App. LEXIS 2593 at *13 (Tex. App.—Eastland Mar. 6, 2014, no pet.) (mem. op.) (parent failed to present evidence at trial regarding whether modification of child support obligation should be applied retroactively). As such, we cannot say that the trial court abused its discretion when it did not order retroactive child support. Lindsey's second issue is overruled.

## Issue Three: Confirmation of Arrearage

In her third issue, Lindsey contends that the trial court abused its discretion in confirming child support arrearages in an amount that was not supported by the evidence. In a sub-issue, she contends the trial court erred by crediting medical insurance payments against the arrearage because Robert did not plead an offset.

7

At trial, both parties agreed on the record that the amount of child support arrearage under the temporary orders is $3,070.76. Further, Lindsey agreed that Robert was entitled to a credit of $940 for her failure to carry insurance as she had agreed in the temporary orders. In her pronouncement, the judge ordered Robert to pay $100 per month "on the $3,000 arrearage that we figured out. He will get credit for the $94 [insurance premium] times ten months." In the decree, a child support arrearage of $2,174 is confirmed, a judgment is granted against Robert in that amount, and he is ordered to pay $100 on the arrearage until it is paid in full. To the extent the trial court erred by granting an offset, Lindsey invited the trial court to take this action and she is estopped from taking a position on appeal clearly adverse to the position she took unequivocally at trial. *See Dyer v. Dyer,* No. 11-20-00212-CV, 2022 Tex. App. LEXIS 4821, at *10–11 (Tex. App.—Eastland July 14, 2022, no pet.) (mem. op.) (appellant estopped from complaining about testimonial concession concerning sale of separate property and invited trial court error in ordering property sold); *Philipp v. Tex. Dep't of Family & Protective Servs.,* No. 03-11-00418-CV, 2012 Tex. App. LEXIS 2760, at *19–20 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.) (party estopped from complaining on appeal about agreed injunction). Moreover, Lindsey is not harmed in the calculation of the arrearage and credit she agreed to because the trial court made an error in her favor of $43.24.[7] In this instance, we find no abused discretion in crediting the arrears or in confirming the amount of arrears agreed to by the parties. Accordingly, we overrule Lindsey's third issue.

---

[7] $3,070.76 minus the $940 credit leaves a balance of $2,130.76.

**Issue Four: Attorney's Fees**

In her fourth issue, Lindsey contends that the trial court abused its discretion in denying her request for attorney's fees incurred in connection with her motion for enforcement of child support. *See* § 157.167.

A movant is entitled to reasonable attorney's fees and court costs in an enforcement action when "the court finds that the respondent has failed to make child support payments . . . ." § 157.167(a). A trial court may waive the requirement for good cause so long as the court states the reasons supporting that finding. § 157.167(c); *Russell v. Russell*, 478 S.W.3d 36, 46 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Absent a finding of good cause, the award of attorney's fees and costs under section 157.167 is mandatory.

In this case, the trial court found that Robert failed to make all of his required child support payments and granted an arrearage in an amount agreed to by both parties. However, the trial court did not specifically find that good cause existed to deny an award of attorney's fees. *See* § 157.167(c). Under these circumstances, the award of reasonable attorney's fees and costs is mandatory, and the trial court abused its discretion in failing to award attorney's fees to Lindsey. *See Russell*, 478 S.W.3d at 50 n.8 (explaining that finding of "good cause" for denying fees under section 157.167 could not be implied); *Higgins v. Higgins*, No. 05-98-02014-CV, 2000 Tex. App. LEXIS 6136, at *12 (Tex. App.—Dallas Sept. 7, 2000, no pet.) (same). We sustain Lindsey's fourth issue and reverse the judgment to the extent it denies Lindsey an award of attorney's fees. We remand the cause to the trial court to (1) determine and award Lindsey's reasonable

attorney's fees or (2) find that good cause exists to deny an award of attorney's fees and state any reasons supporting that finding.  *See* § 157.167(c); *Russell*, 478 S.W.3d at 46.

## Issue Five: Imposition of Geographic Restriction

In her last issue, Lindsey contends the trial court abused its discretion in imposing a geographic residency restriction to Hockley County and contiguous counties.

Once a trial court appoints joint managing conservators and designates the parent who has the exclusive right to determine the primary residence of the child, it then has the discretion to either establish a geographic area where the child may reside or specify that there are no geographic restrictions.  *See* § 153.134(b)(1).  The Family Code does not, however, provide specific factors for a court to consider when determining whether a geographic restriction is in the best interest of a child.  In *Lenz,* the Texas Supreme Court provided a variety of factors relevant to the determination of whether a geographic restriction is in the best interest of the child, including: (1) the reasons for and against the move; (2) the effect on extended family relationships; (3) the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (4) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (5) the nature of the child's existing contact with both parents, and the child's age, community ties, and health and educational needs.  *Lenz v. Lenz,* 79 S.W.3d 10, 14–16 (Tex. 2002).  Further, trial courts are to consider the public policies identified in section 153.001(a).  Those policies include assuring that children will have frequent and continuing contact with parents who have shown the ability to act in the child's best

10

interest; determining who can provide a safe, stable, and nonviolent environment for the child; and encouraging parents to share in the rights and duties of raising their child. § 153.001(a); *Lenz,* 79 S.W.3d at 14. Although *Lenz* involved a modification proceeding, the factors are also applicable in an appeal of a trial court's decision regarding geographic restriction in a divorce decree. *See Morgan v. Morgan*, 254 S.W.3d 485, 488 (Tex. App.—Beaumont 2008, no pet.).

To support his contention that the trial court should impose a geographic restriction to Hockley County, Robert emphasized the parties' strong family ties to Levelland. When he and Lindsey met, she was living in Levelland. Robert's extended family, consisting of his mother, stepfather, brother, aunts, and cousins live in and around Levelland. Lindsey is from Levelland as well, and most of her family lives in Levelland. She and H.L.F. have been living with her parents and grandparents in Levelland during the pendency of the divorce. H.L.F. is six years old, attends kindergarten in Levelland, and is involved in sports activities there. According to Robert, Lindsey's support system is her family, and "she really depends on her family a lot, and they all reside in Hockley County." Robert would like to see H.L.F. around his support system and he has future plans to relocate to Hockley County. Since the separation, the parties are cordial and have been able to work out issues with visitation.

By Lindsey's account, she has been the primary caretaker of H.L.F. and the more stable parent. Robert often worked away from home during the marriage and changed jobs frequently. When he moved out of the marital residence, Robert eventually relocated to Seymour, a three-hour drive from Levelland. He could move closer to H.L.F. but chooses not to. Lindsey noted one reason she objected to a residency restriction was

because Robert moved away willingly, yet he is not restricted from moving. Lindsey has not formulated a definitive plan to move, testifying that it is a possibility "depending on jobs that arise" or if she remarried. Lindsey was unemployed at the time of trial and did not testify to any specific job offers.

The trial court was presented with evidence of extended family support for H.L.F. in Levelland, where both Lindsey and Robert were raised. The trial court could have balanced Lindsey's reasons for opposing a restriction and the effects on H.L.F.'s extended family relationships and visits with Robert and determined that it was in H.L.F.'s best interest to reside within the geographical boundaries of Hockley County and contiguous counties. By restricting H.L.F.'s residence to Hockley County and contiguous counties, the trial court was ensuring the parents would be able to exercise their rights as joint managing conservators. In considering the public policies outlined in the Family Code, the trial court recognized the child's need for stability and ensured that H.L.F. would have frequent and continuing contact with both of his parents who have done a commendable job of acting in H.L.F.'s best interest. *See Lenz,* 79 S.W.3d at 14. We conclude that the trial court had sufficient information at the time of the bench trial upon which to exercise its discretion. Based on the evidence presented, we cannot say the trial court erred in its application of that discretion. We overrule issue five.

### CONCLUSION

Having sustained Lindsey's fourth issue related to attorney's fees, we reverse the trial court's judgment, in part, and remand to the trial court for further proceedings

12

consistent with this opinion.  Having overruled Lindsey's remaining issues on appeal, we affirm the judgment of the trial court in all other respects.


Judy C. Parker
Justice

13