

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-25-00156-CV

IN THE INTEREST OF A.N.G. AND A.G.G., CHILDREN

On Appeal from the 121st District Court
Terry County, Texas
Trial Court No. 21590, Honorable John A. Didway, Presiding

January 28, 2026

OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Mother, appeals the trial court's order modifying the parent-child relationship and appointing Father as the conservator with the exclusive right to designate the primary residence of the children.[1]  We affirm the trial court's modification order.

**BACKGROUND**

Mother and Father divorced in February of 2022.  The agreed final divorce decree named both Mother and Father as joint managing conservators of their daughters, A.N.G.

---

[1] To protect the privacy of the parties involved, we refer to the appellant mother as "Mother," the appellee father as "Father," and the children as "A.N.G." and "A.G.G."  *See* TEX. FAM. CODE § 109.002(d).

and A.G.G. Under the decree, Mother was appointed as the parent who had the exclusive right to designate the primary residence of the children without regard to geographic area. Father was awarded standard possession.

In February of 2024, Father filed a suit to modify the decree of divorce. In his amended petition, he requested that he be appointed the conservator with the right to designate the primary residence of the children. The suit was tried to the bench in October of 2024. The trial court entered an order modifying the prior order and appointed Father as the joint managing conservator with the exclusive right to designate the primary residence of the children within Lubbock or Andrews counties. Mother was awarded standard possession. Upon Mother's request, the trial court entered findings of fact and conclusions of law. Mother timely filed her appeal of the trial court's order.

## APPLICABLE LAW

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. *In re A.M.*, 604 S.W.3d 192, 196 (Tex. App.—Amarillo 2020, pet. denied). Accordingly, we review a decision to modify conservatorship and possession of or access to a child for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court may modify a conservatorship order if modification would be in the best interest of the child, and the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date of the rendition of the prior order.

2

TEX. FAM. CODE § 156.101(a)(1)(A).[2]  We will not disturb a trial court's decision in a modification case unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding principles. *In re A.M.*, 604 S.W.3d at 196–97.  In our review of a modification order under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id*.  An appellate court applies a two-prong analysis when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *Id*.  The sufficiency review is related to the first inquiry.  If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id*.  The trial court's exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re A.D.T*., 588 S.W.3d 312, 319 (Tex. App.—Amarillo 2019, no pet.); *In re Marriage of Hamer*, 906 S.W.2d 263, 265 (Tex. App.—Amarillo 1995, no writ).

Because of the fact-intensive nature of reviewing custody issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor because the child's and parent's behavior, experiences, and circumstances are conveyed

---

[2] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez*, 148 S.W.3d 449, 458–59 (Tex. App.—El Paso 2004, no pet).

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. § 153.002. We review a trial court's best-interest finding by using the well-established *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3]

### ANALYSIS

At the outset, we note that Mother concedes that there is sufficient evidence in the record to support the trial court's finding that a material and substantial change in circumstances had occurred. *See* § 156.101(a)(1)(A). As such, we need only to review the evidence considering the best interest prong. § 156.101(a).

In her first and second issue, Mother contends that the trial court erred in determining that it was in the best interest of the children (1) "for their primary residence to be relocated" and (2) appointing Father as the conservator with the exclusive right to designate the primary residence of the children, as there was factually and legally insufficient evidence to support such determinations.

---

[3] These factors, which are not exhaustive, include: (1) the child's desires, (2) the child's present and future emotional and physical needs, (3) any present or future emotional and physical danger to the child, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist the individuals seeking custody to promote the child's best interest, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper, and (9) any excuse for the parent's acts or omissions. *Id.* In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation. *In re V.L.K.,* 24 S.W.3d 338, 343 (Tex. 2000).

Mother frames her first issue as a challenge to the "relocation" of the children and urges us to apply the *Lenz* factors in our best interest analysis. *See Lenz v. Lenz*, 79 S.W.3d 10, 14–16 (Tex. 2002) (best interest factors relevant to primary custodial parent's right to modify residency restriction when parent desires to relocate).[4] Specifically, she complains about the trial court's failure to address the *Lenz* factors in its findings of fact and conclusions of law. According to Mother, the prior jurisprudence of this Court has been to apply the *Lenz* factors "any time a trial court makes a decision regarding creating or modifying a geographic restriction, which was certainly done here." In support of her contention, Mother cites to *In re Marriage of Featherston*, 675 S.W.3d 330, 337–38 (Tex. App.—Amarillo 2023, no pet.) (mother challenged geographic restriction in divorce decree); *In re C.M.G.*, 339 S.W.3d 317, 321 (Tex. App.—Amarillo 2023, no pet.) (modification of geographic restriction and relocation of custodial parent); *In re C.P.L.*, No. 07-11-00128-CV, 2011 Tex. App. LEXIS 9815, at *11 (Tex. App.—Amarillo Dec. 14, 2011, no pet.) (mem. op.) (mother challenged failure to lift geographical restriction and appointment of father as conservator with exclusive right to designate primary residence of child); *In re M.C.W.*, No. 07-10-00055-CV, 2010 Tex. App. LEXIS 10041, at *5–7 (Tex. App.—Amarillo Dec. 16, 2010, pet. denied) (mem. op.) (geographic restriction expanded to allow custodial parent relocation). Our prior precedent makes clear that a custodial

---

[4] In *Lenz*, the Texas Supreme Court evaluated the standards for relocation and identified a variety of factors relevant to the determination of whether lifting a geographic restriction is in the best interest of the child, including: (1) reasons for and against the move; (2) effect on extended family relationships; (3) effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (4) possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (5) nature of the child's existing contact with both parents, and the child's age, community ties, and health and educational needs. *Lenz*, 79 S.W.3d at 15–16.

5

parent's challenge to a geographic restriction, alone or coupled with a request by the custodial parent to relocate, is analyzed through the *Lenz* factors. What is missing here is a challenge by Mother to the geographic restriction or a parental relocation. In his testimony, Father requested a geographic restriction even though his pleadings did not support one. Mother did not object to this testimony at trial[5] and does not challenge the geographic restriction in her appeal.

The evidence at trial proved that Mother and the children reside in Andrews County and Father resides in Lubbock County. Neither Mother nor Father testified that they intended to relocate residences. The trial court imposed a geographic area within which Father may determine the children's primary residence: Andrews or Lubbock counties. A change in the conservator with the right to determine the primary residence of the children necessarily involves a change in location of the children's residence because a child resides where the custodial parent resides. *See* § 153.134. In the absence of Mother's challenge to the geographic restriction and no facts indicating a parental relocation, we find no abuse of discretion by the trial court in failing to address the *Lenz* factors in its findings of fact and conclusions of law. *See In re L.J.L.C.*, Nos. 07-21-00061-CV & 07-21-0062-CV, 2022 Tex. App. LEXIS 5845, at *20 (Tex. App.—Amarillo Aug. 11, 2022, no pet.) (mem. op.) (controlling issues in modification case are material and substantial changes in circumstances of child or conservator and whether modification is in best interest of child). We overrule issue one.

---

[5] Whether pleaded or not, the trial court may impose a geographic restriction when the pleadings generally invoke the court's jurisdiction over issues surrounding the child, even if the pleadings do not specifically request a restriction. *See In re Marriage of Christenson*, 570 S.W.3d 933, 940 (Tex. App.—Texarkana 2019, no pet.).

In her second issue, Mother challenges the appointment of Father as the conservator with the exclusive right to determine the primary residence of A.N.G. and A.G.G.

The trial court heard evidence that, since the divorce, Father lived in Lubbock and had married Alicia. Father, Alicia, and her three children, aged ten, eight, and five, have lived in their current residence for three years. Father has been employed at All Star Automotive for four years and makes $25 per hour as a mechanic.

At the time of trial, Mother and the children lived in Andrews. A.N.G. is seven years old and she is in second grade. A.G.G. is five years old and she is in kindergarten. After the divorce, Mother moved to Midland and later moved to Andrews. Mother has been employed as a property manager at the Avenue Commons Apartments for three years. Mother testified that Nicholas is her boyfriend, and he has lived with her and the children for "about a year."

Father testified that he had concerns about the children's stability with Mother. A.N.G. has attended three schools since she started kindergarten. After moving to Andrews, A.N.G. had four unexcused absences and missed nine days of school. Father has concerns about Nicholas's criminal history and attempted to discuss his concerns with Mother, but she told him "It's none of [his] business." The trial court heard evidence that Nicholas was arrested in 2015 for assault bodily injury to a family member. In 2019, he was placed on probation after his arrest for driving while intoxicated, possession of marijuana, and possession of a controlled substance. After Mother and Nicholas began dating, he was arrested for evading arrest or detention. According to Father, after

Nicholas moved into Mother's home, A.G.G. began to wet the bed when she was at Father's house for visitation. Mother disputed the timing of the bed-wetting and denied that it was a problem at her house.

During Father's weekend periods of possession, A.N.G. constantly eats and A.G.G. hides food. When Father attempts to discuss the children's eating habits with Mother, such as A.N.G.'s overeating or his suspicions that she might have diabetes, Mother "blows [him] off" and refuses to discuss it.

The trial court also heard evidence that Father took the children on vacation, and attended school events, medical appointments, and extracurricular activities. Father testified that if the children live with him, "they're more stable, they seem to really be happy when they're with us." The girls have a "bunch of kids to play with" and "enjoy the animals that we have at the house."

The trial court heard testimony from Linda K. Boyd, a licensed professional counselor. She has seen the children, at Mother's request, once or twice a month since the spring of 2022. According to Boyd, she was seeing the children so that they could learn to express their feelings and anger appropriately. Boyd specifically denied that she was seeing the children because of Father's mistreatment or because he was a "bad dad." In her opinion, both parents are putting the children in the middle of their conflict.

The evidence showed that Mother and Father had substantial difficulty in co-parenting and communicating with each other. Mother acknowledged that the communication between her and Father is "antagonistic." The trial court heard evidence of Mother's efforts to disparage or interfere with Father's relationship with the children by

8

failing to include him as "father" on school and daycare enrollment records, referring to Father as an "alcohol abuser" on the children's medical records, and neglecting to provide Father with the children's soccer and cheer schedules. In contrast, there was evidence in the record that Father regularly communicated with Mother about his concerns regarding the children's eating habits, changes in behavior, and medical issues. During his periods of possession, he includes Mother "in every possible family event with the girls." He gave an instance where he enrolled the children in gymnastics during his extended summer possession and let Mother know the schedule because the children wanted her to be there. The trial court could have determined that it was in the best interest of the children to designate Father as the conservator with the exclusive right to designate the children's primary residence because he was the parent who best communicated the needs and concerns of the children. *See Epps v. Deboise*, 537 S.W.3d 238, 248 (Tex App.—Houston [1st Dist.] 2017, no pet.) (best interest of child to designate parent who best communicated needs and concerns of child as conservator with exclusive right to determine primary residence).

Because some evidence of a substantive and probative character exists to support the trial court's decision, we find that the trial court did not abuse its discretion by finding that it was in the best interests of the children that Father be appointed as the person who determined the children's primary residence. *See Holley*, 544 S.W.2d at 371–72. We overrule issue two.

9

**CONCLUSION**

Having considered the record before us and affording the deference to be given to the trial court's resolution of underlying facts and credibility determinations that may have affected its decision, we hold that the trial court acted within its discretion by modifying the conservatorship and naming Father the conservator with the exclusive right to determine the primary residence of A.N.G. and A.G.G. We affirm the judgment of the trial court.

Judy C. Parker
Chief Justice
